## In re Irénée duPont.

*New Castle, October 21, 1963.*[1]

S. *Samuel Arsht,* of Morris, Nichols, Arsht & Tunnell, Wilmington, for petitioning guardians.

SEITZ, Chancellor: The guardians appointed under 12 *Del.C.* § 3914 have filed a "petition for authorization to make charitable contributions" pursuant to the provisions of 12 *Del.C.* § 3710.[2]  Because

1. This is an elaboration for reporting purposes of a memorandum opinion filed August 19, 1963.

2. The powers conferred by § 3710 are made applicable to guardians for the aged, mentally infirm, and physically incapacitated by § 3914(d).

this is a pioneer case under § 3710, I feel that the court's position with respect to certain matters raised by the petition should be stated for the information of others who may invoke the statute. I quote the statute:

"§ 3710. Court of Chancery empowered to authorize charitable contributions under certain circumstances

"(a) The Court of Chancery is empowered to authorize trustees for mentally ill persons to make specific contributions from income from the estate of such person to a corporation, trust, or community chest, fund or foundation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; provided, however, that such specific contribution is deductible under the Internal Revenue Code of the United States. However, no contribution shall be authorized except after a hearing on reasonable notice to those who would be the next of kin upon the death of the mentally ill person and to other interested persons, if any, and unless the Court is reasonably satisfied as to the following:

"(1) That the amount of such contribution will not, reasonably viewed, be needed for the present or future support of the mentally ill person, and for others who are or might become entitled to any of such income, and

"(2) That the making of the contributions will not imperil the preservation of the corpus or principal of the estate of the mentally ill person, and

"(3) That the making of the contribution will not be contrary to the religious beliefs of the mentally ill person, and

"(4) That in the light of the background, station in life, and disposition of the mentally ill person such a contribution appears reasonable and appropriate and one that he might have

been expected to make; provided, however, that the absence or unavailability of such evidence will not defeat the application if the Court is otherwise satisfied.

"(b) No authorization hereunder for a contribution shall be effective beyond one year from the date of the order, and the aggregate of contributions authorized to be made within one year shall not exceed 10 per cent of the gross income of the mentally ill person for the preceding calendar year.

"(c) This section shall, not be construed to abridge the existing powers of the Court over the estates of mentally ill persons.

"(d) The Court of Chancery may adopt rules to carry out the power granted by this section. *Added* 51 *Del.Laws, Ch.* 181, eff. June 19, 1957."

■ 1. I conclude that the court may treat the presentation of a sworn petition as the "hearing" required by the statute. However, the court may proceed to take evidence if it believes that that course is preferable or if it is desired by an objecting party. If a supplemental affidavit provides the additional material required by the court in this instance, no oral testimony will be necessary unless objection is made by the additional parties who are to be notified.

■■ 2. The statute speaks of notice "to other interested persons, if any". The court believes that this language requires it to look, *inter alia,* to those mentioned in any outstanding will to see whether they should be notified. The court will consider on a case by case basis the delicate problem of disclosing the contents of such wills. The will and codicils here involved should be filed with the court and they will be sealed subject only to court examination. The court is advised that the grandchildren, some of whom are adults and some of whom are not, have a substantial expectancy under the will. They have not waived notice. The next of kin have waived notice. I conclude that the grandchildren who are 18 years of age or older should receive notice by mail of the presentation of the petition. Appropriate proof of notice should be submitted. Since there are several grandchildren who are of age, I consider the suggested notice

to be legally adequate for this case. I also emphasize that the court will tailor its approach to the notice problem to fit particular situations as they arise until appropriate rules of court have been adopted. Proposed rules of court are soon to be formulated.

■ 3. The problem is presented as to whether the General Motors stock received by the guardians as distributions on their stockholdings in the DuPont Company and Christiana Securities Company is to be considered as part of "gross income" in 1962 for purposes of applying the 10% limit on charitable contributions which appears in the statute. I conclude that such stock is part of the "gross income" for the purpose stated. My primary basis for so concluding is the fact that such stock would probably have belonged to income beneficiaries under our trust apportionment law as it existed when the charitable contribution statute was enacted (1957). Moreover, for tax purposes, it was "income" to Mr. DuPont, albeit it was subject to a different tax rate.

The powers granted the court under the statute are sufficiently flexible to forestall any possible undesirable results which might otherwise flow from a broad interpretation of this provision of the statute.

4. I conclude that the assets to be distributed as charitable contributions need not themselves be income items so long as there is a sufficient dollar value of income in any form in the particular period involved. The statutory language empowering the court to authorize "specific contributions from income" imposes only an "accounting" limitation with respect to the availability of funds for such contributions and not a limitation as to the origin of the assets to be distributed. Because a ward in this area owns both income and principal, the origin as income or non-income items of the assets to be distributed is not here significant. The statute elsewhere provides adequate safeguards in subsections (a)(1) to (a)(4) against an unwise depletion of the total estate. Also to the extent that non-income items are used in making charitable contributions, income items of equivalent value will be treated as principal. As noted above, § 3710 permits the court to adopt a flexible approach in this area.

5. I believe there should be some evidence as to the present donative capacity or lack of same of the ward. This material may be submitted by affidavit subject to the same conditions as appear in paragraph (1).

6. I believe there should be some reasonably based estimate as to the amounts of income to be expected in 1963 and 1964.

7. The court will require that it be supplied with a copy of the charitable trust agreement of December 25, 1947, which trust is a proposed recipient of a portion of the charitable contributions.

Counsel may proceed by noticing the presentation of the petition at a time to be obtained from the court.